Argued November 1, reversed December 17, 1973

OLYMPIA BREWING COMPANY ET AL, *Petitioners,*
*v.* OREGON LIQUOR CONTROL COMMISSION,
*Respondent.*
516 P2d 1321

*William H. Kinsey,* Portland, argued the cause for petitioners. With him on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondent. On the brief were Lee Johnson, Attorney General, and John W. Osburn, former Solicitor General, Salem.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

FOLEY, J.

Effective August 1, 1973, the respondent Oregon Liquor Control Commission withdrew certification, under Oregon's so-called "Bottle Bill,"[1] of "Tall 12"[2] bottles. Petitioners have petitioned this court for review of the order withdrawing certification, seeking reversal of the Commission's order.[3]

By way of background, the Oregon Liquor Control Commission had, before the Bottle Bill went into effect in October 1972, certified the "Tall 12" bottle for several brewing companies: Carling, Miller, National and Olympia. Carling and Miller later agreed to the withdrawal of certification for their use of the bottle because they were not actually using the bottle. At the time certification was withdrawn only National and Olympia were using the bottle. It is conceded that only Olympia was actually *reusing* the bottle although National had agreed in writing that it would take and receive for reuse any bottles offered to it. The Commission held in withdrawing certification that the "Tall 12" bottle is no longer qualified for certification because no more than one manufacturer is, in the ordinary course of business, *accepting* the "Tall 12" bottle for reuse as a beverage container and paying the refund value thereof as required by ORS 459.860 (2) (b). De-

---

[1] ORS 459.810 et seq.

[2] The proper name of the bottle is "Select Shape, 12-Ounce Bottle, Northwestern Glass Company Mold #531."

[3] It is to a manufacturer's advantage to use certified bottles since the required deposit and refund is less than on noncertified bottles. ORS 459.820.

termination of this controversy requires a construction of this statute which reads:

"(1) To promote the use in this state of reusable beverage containers of uniform design, and to facilitate the return of containers to manufacturers for reuse as a beverage container, the commission shall certify beverage containers which satisfy the requirements of this section.

"(2) A beverage container shall be certified if:

"(a) It is reusable as a beverage container by more than one manufacturer in the ordinary course of business; and

"(b) *More than one manufacturer will in the ordinary course of business accept the beverage container for reuse as a beverage container and pay the refund value of the container.*

"* * * * *." (Emphasis supplied.)

The issue, specifically stated, is: Does ORS 459.860 (2) (b) require as a condition of certification that a second manufacturer actually be reusing the bottles, or are the requirements satisfied when the second manufacturer has agreed to take and receive for reuse any bottles offered to it and to pay the refund value?

The Commission insists that the standards set forth in the above statute contemplate a certification of only such bottles as will in the ordinary course of business be reused by more than one manufacturer. Petitioners, on the other hand, contend that the wording in the statute which says "[m]ore than one manufacturer will in the ordinary course of business accept * * *" the bottles for reuse is clear and unambiguous. They contend "will * * * accept" means "is willing to accept," while the Commission contends that the words "will * * * accept" really mean *"does* accept." The Commission concedes National has agreed unequivo-

cally that it would accept the "Tall 12" containers if any containers were offered to it.[4] We think the legislature in passing ORS 459.860 (2) (b) contemplated that a certified bottle would be the subject of acceptance by at least two manufacturers for reuse as a beverage container. If ORS 459.860 (2) (b) were intended by the legislature to require actual reuse of a certified container by more than one manufacturer, it could have easily so stated. The general rule for construction of statutes set forth in ORS 174.010 precludes the inserting of what has been omitted or the omitting of what has been inserted. To arrive at the construction contended for by the Commission we would have to insert language mandating acceptance by both manufacturers rather than willingness to accept as appears in the statute. We conclude that National by its unequivocal "consent to receive" complied with the statute.[5]

The Commission recites an amendment by the 1973

---

[4] It appeared from the evidence at the hearing that the reason the two manufacturers both use the containers in marketing in Oregon but only Olympia actually picks up the containers for reuse is an economic one. The Olympia plant where the bottles are reused is much closer to Oregon than The National Brewing Company plant which is in Arizona. The transportation costs make it less desirable from an economic standpoint for the Arizona company to transport the bottles there for reuse.

[5] Our construction is consistent with the purpose of the statute. The Oregon Bottle Bill was enacted by the 1971 Legislature in an effort to deal with a portion of the problem of litter and solid waste resulting from disposable beverage containers. American Can Co. v. OLCC, 15 Or App 618, 517 P2d 691 (1973), Sup Ct *review denied* (1974). There was testimony at the hearing before the Commission that there was a return rate of 85 per cent of the "Tall 12" bottles and there was also unrefuted testimony that a return rate of 85 per cent is remarkably high considering breakage and other factors. Although Olympia and National both use the containers in the ordinary course of business, only Olympia reuses the containers. Nevertheless, the purpose of the Bottle Bill is being accomplished by the high percentage return rate of the bottles offered.

Legislature to ORS 459.860 which appears to make bottle certification by the Commission a discretionary rather than a mandatory act by adding the following subsection (3) to said statute:

> "The commission may by rule establish appropriate liquid capacities and shapes for beverage containers to be certified or decertified in accordance with the purposes set forth in subsection (1) of this section." Oregon Laws 1973, ch 693 (SB 481).

Under this language the Commission states it is given direct authority to promote the use of reusable beverage containers of uniform design by eliminating nonstandard bottles, even though they may be reusable or acceptable for reuse by more than one manufacturer. It points out that the adoption of such a rule may render the present proceeding moot.

Whatever the Commission may do in the future under this amendment we are not called upon to decide, but under the circumstances of this case, where we find compliance with the statute by the two manufacturers, the order of the Oregon Liquor Control Commission withdrawing certification of the "Tall 12" bottle is reversed.

Reversed.